UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

WILLIAM K. LANGFAN,

       Plaintiff,

                                   CASE NO. 1:11-cv-405

v.

                                   HON. ROBERT HOLMES BELL

THE GOODYEAR TIRE & RUBBER CO.,
an Ohio corporation, and DAVID
O'DONNELL, and FRANK BALLO,

       Defendants.

_____/

## O P I N I O N

       This matter is before the Court on motions to dismiss Plaintiff's second amended complaint filed by Defendants Frank Ballo, David O'Donnell, and The Goodyear Tire & Rubber Company ("Goodyear"). (Dkt. Nos. 24, 26, 38.) For the reasons that follow, Defendants' motions will be granted.

## I.

       Plaintiff owns a three unit strip mall in Benton Township which he purchased in 1987. For over twenty years, Defendant Goodyear leased space on this property and operated an auto service center. Plaintiff decided to sell the property in 2004. However, an environmental site assessment performed by the potential buyer revealed that the property had been contaminated with petroleum in the soil. As the operator of the premises, Goodyear took responsibility for the petroleum releases. (Dkt. No. 22, Second Am. Compl. at ¶ 8.)

In 2008, four years after the discovery of soil contamination, Plaintiff filed an action against Goodyear in Berrien County Circuit Court alleging that Goodyear was evading its remedial obligations under Michigan law and seeking damages under the lease for undue waste, for failing to return the property in substantially the same condition as when let, and for indemnification of remedial activities undertaken by Plaintiff. (*Id.* at ¶ 18.) A bench trial on these issues has already occurred in state court.

After conducting tests and removing 250 tons of soil with the aid of an environmental consultant, Goodyear eventually sought a "no further action" letter (NFA) from the Michigan Department of Environmental Quality ("MDEQ"). An NFA is a document issued by MDEQ stating that, based on information provided by a responsible party, a particular cite has been adequately remediated under the Michigan Natural Resources and Environmental Protection Act, Mich. Comp. Laws § 324.20101 *et seq.* ("NREPA"), and that no further remedial action is presently required. At all times relevant to this case, there was no statute specifically governing NFAs; their issuance was a discretionary practice of the MDEQ.

The MDEQ issued an NFA regarding Plaintiff's property on January 27, 2010. After describing the reports and materials reviewed, the NFA concludes:

> Based upon the information and representations in the Summary Report and other submittals, the Goodyear Auto Service Center #6145, 1925 Pipestone Road, Benton Harbor, Berrien County, Michigan, has been addressed and does not require further remediation.
>
> The MDNRE[1] has not made a determination regarding full compliance with the Part 201 Administrative Rules effective December 21, 2002. The

---

[1] MDNRE was the former name for the agency now named MDEQ.

> MDNRE express no opinion as to other contaminants beyond those identified and remediated as part of the representations submitted. This document does not convey or imply any other position of the MDNRE regarding known or potential environmental conditions and compliance with environmental protection laws and regulations.

(Dkt. No. 22, Ex. 4.)  At the time of issuance, Defendant Frank Ballo was the MDEQ officer responsible for overseeing the project at Plaintiff's property.  Mr. Ballo's supervisor was Defendant David O'Donnell.

MDEQ did not notify Plaintiff that it was considering issuing an NFA with respect to Plaintiff's property.  Plaintiff did not have an opportunity to present arguments before the MDEQ issued the NFA on January 27, 2010.  There is no law or rule requiring such notice, though Plaintiff points to state court testimony by Defendant O'Donnell stating that notice to a property owner prior to issuance of an NFA would be good practice and that failure to notify Plaintiff was simply a product of understaffing and neglect. (Dkt. No. 33 at 11.)

After issuance of the NFA, Plaintiff retained an environmental consultant and attempted to convince MDEQ to rescind its action, to no avail.  (*Id.* at 9.)  Plaintiff also attempted to exclude the NFA and add due process claims concerning the NFA to his ongoing state court action, but his motions to exclude and to amend his complaint were denied.  (Dkt. No. 22 at ¶ 31; Dkt. No. 27 at 3.)

Having no success in state court, Plaintiff filed the present action.  Counts I and II of Plaintiff's Second Amended Complaint assert claims under 42 U.S.C. § 1983, alleging that Defendants violated his procedural due process rights by issuing the January 26, 2010, NFA without providing him notice and an opportunity for a hearing.  Count III

alleges that Goodyear's use of the NFA in the state court proceeding constitutes an abuse of process.

## II.

To survive a Rule 12(b)(6) motion to dismiss, a plaintiff must plead "sufficient factual matter" to "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 557 (2007)).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citation omitted).  A pleader must present "more than a sheer possibility that a defendant has acted unlawfully." *Id.*  "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'— 'that the pleader is entitled to relief.'" *Iqbal,* 129 S.Ct. at 1950 (quoting Fed. R. Civ. P. 8(a)(2)).  In applying this standard, the complaint must be viewed in the light most favorable to the plaintiff, the allegations in the complaint are accepted as true, and all reasonable inferences are drawn in favor of the plaintiff.  *Bassett v. Nat'l Collegiate Athletic Ass'n*, 528 F.3d 426, 430 (6th Cir. 2008).

## III.

A.  Counts I & II - § 1983 Claim for Violation of Procedural Due Process

The basis for Plaintiff's § 1983 claim is that the MDEQ's issuance of an NFA letter with respect to his property without notice or an opportunity for a hearing violated

his rights under the due process clause of the 14th Amendment.[2]  Plaintiff seeks relief in the form of a declaration that Defendants violated his constitutional rights, invalidation of the NFA, and civil damages.

In order to establish a Due Process claim under § 1983, a plaintiff must show: (1) that he had a life, liberty, or property interest protected by the Due Process Clause of the Fourteenth Amendment; (2) that he was deprived of that protected interest; and (3) that the state did not afford him adequate procedural rights before depriving him of his protected interest.  *Wedgewood L.P.I. v. Twp. of Liberty*, 610 F.3d 340, 249-50 (6th Cir. 2010).  The first inquiry in a due process challenge is whether the plaintiff has a protected property interest.  "The requirements of procedural due process apply only to the deprivation of interests encompassed by the Fourteenth Amendment's protection of liberty and property."  *Bd. of Regents v. Roth*, 408 U.S. 564, 569 (1972).  If a plaintiff has no protected interest, the inquiry ends.

In all three motions to dismiss, Defendants argue that Plaintiff's § 1983 claims must fail because Plaintiff has not been deprived of a constitutionally protected property right.  Plaintiff complains that he was not given notice or an opportunity to be heard before the MDEQ issued its NFA, but Plaintiff was not entitled to due process protection unless the MDEQ's action deprived him of a protected property interest.

---

[2] Defendants Ballo and O'Donnell, as MDEQ officers, are state actors subject to the 14th Amendment.  Defendant Goodyear is implicated in Plaintiff's § 1983 claim on a theory of civil conspiracy.  Plaintiff alleges that Goodyear colluded with Frank Ballo to improperly issue the NFA so that Goodyear could use the document as a "blindside litigation tactic" against Plaintiff in state court. (Dkt. No. 33 at 7-8.)

Defendants maintain that an NFA cannot be the basis of a protected property right because the issuance or non-issuance of an NFA is entirely within the discretion of the MDEQ.  An NFA is basically an indication by the MDEQ that it has decided not to require liable parties to take further response activities with respect to a particular site of environmental contamination.  Because nothing in the NREPA compels the MDEQ to initiate an enforcement action, a decision not to require further action is wholly within the discretion of the agency.  *See* Part 201 § 20118(1) ("The department *may* take response activity . . . that the department concludes is necessary and appropriate to protect the public health, safety, or welfare, or environment.") (emphasis added); Part 201 § 20102(m) ("[I]t is the intent of the legislature that, in implementing this part, the department shall act reasonably in its exercise of professional judgment.")  It is well established that discretionary governmental actions do not give rise to constitutionally protected property interests.  *See e.g. Roth*, 408 U.S. at 577 (explaining that the interest claimed must be more than a "unilateral expectation . . . [the claimant] must, instead, have a legitimate claim of entitlement to [the property interest]."); *Med Corp., Inc. v. City of Lima,* 296 F.3d 404 (6th Cir. 2002) ("[I]n order to assert a property interest . . . [plaintiff] must point to some policy, law, or mutually explicit understanding that both confers the benefit and limits the discretion of the City to rescind the benefit.")

In response, Plaintiff contends that the property interest in question is not a governmentally conferred benefit, but rather his property interest in the Benton Township strip mall.  Plaintiff argues that, by issuing an NFA, the MDEQ "took the heat off Goodyear to complete the remediation of the property," thereby leaving Plaintiff with a

property encumbered by contamination.  (Dkt. No. 33 at 16; Dkt. No. 40 at 3.)  Plaintiff points to MCL 324.20101(1)(o) and MCL 324.20116, which require the owner of a "facility" (defined as a site containing contaminants in excess of residentially approved levels) to undertake certain due care precautions, and to inform potential purchasers of the nature and extent of contamination.  (Dkt. no. 33 at 14-15.)  Plaintiff believes that these restrictions cloud his title to the Benton Township property, thereby constituting a taking of property.  Plaintiff also argues that the NFA deprived him of property rights under his lease with Goodyear, as Goodyear's use of the NFA in state court "compelled [Plaintiff] to spend additional sums in attorney's fees in an attempt to neutralize the tire company's efforts."  (Dkt. No. 40 at 7.)

After careful consideration, the Court concludes that Plaintiff has not shown that the MDEQ deprived Plaintiff of any constitutionally protected property right by issuing the NFA.  Even accepting Plaintiff's theory that the covenant restrictions placed on the Benton Township property by NREPA could constitute a deprivation of property, the NFA itself did not cause the deprivation.  The contamination of Plaintiff's property, and its resulting status as a "facility" under NREPA, was wholly caused by the actions of Goodyear many years prior to the issuance of the NFA.  The NFA did not cause the petroleum contamination, and thus did not cause any encumbrance on Plaintiff's title.

The NFA merely encapsulates a decision not to require additional remedial action beyond what had already been done by Goodyear at the time of its drafting.  Plaintiff's suggestion that the MDEQ is responsible for any encumbrance of title caused by remaining contamination is tantamount to an assertion that the MDEQ is required to force

Goodyear to perform remedial action to Plaintiff's satisfaction.  Because MDEQ has discretion to enforce remediation under NREPA, this argument fails.  Plaintiff cannot show that the NFA itself deprived him of an entitlement or other protected property interest.  Thus, Plaintiff was not entitled to procedural due process with respect to the NFA, and Plaintiff's § 1983 claims must be dismissed.[3]

## B.  Count III - Abuse of Process

Count III of Plaintiff's complaint alleges the tort of malicious abuse of legal process, and is directed solely at Defendant Goodyear.  "A meritorious claim of abuse of process contemplates a situation where the defendant has availed himself of a proper legal procedure for a purpose collateral to the intended use of that procedure," such as where the defendant "offered to dismiss a[] [separate] action for damages without the need to pay compensation if the plaintiff would cease opposition to the development of a condominium project [the subject of a third suit between the parties]."  *Vallance* v. *Brewbaker,* 161 Mich. App. 642, 646 (1987) (discussing *Three Lakes Ass'n v. Whiting,* 75 Mich. App. 564 (1977)). To state a claim, a plaintiff must plead that a defendant had an ulterior purpose and committed an "act in the use of process which is improper in the regular prosecution of the proceeding." *Id.* at 645 (internal quotations and citation omitted).

---

[3] Plaintiff's appropriate remedy is to sue Goodyear for causing the encumbrance on his title, which is exactly what Plaintiff did in state court.  While it may anger Plaintiff that the NFA letter was utilized by Goodyear in that action, it does not follow that the NFA is therefore responsible for the alleged cloud on Plaintiff's property.

It is unclear from Plaintiff's complaint and brief whether the alleged abuse of process is Goodyear's application to MDEQ for an NFA, or Goodyear's use of the NFA in state court.  In either case, the alleged ulterior motive is a desire by Goodyear to avoid determining and remediating the full extent of contamination on Plaintiff's property. And, in either case, the Court finds that Plaintiff has failed to state a claim upon which relief may be granted.

To the extent that Plaintiff alleges that Goodyear's application for an NFA was itself an abuse of process, the court finds that the MDEQ's consideration and issuance of an NFA is not "legal process," and thus not subject to an abuse of process tort.  To allege abuse of process, "there must have been an issuance of legal or judicial process." 1 Am. Jur. 2d Abuse of Process § 2 (2d ed. 2005); *see also McCarthy v. KFC Corp.,* 607 F. Supp. 343, 345 (W.D. Ky. 1985) (stating that abuse of process "'is the technical designation of the illegal or wrongful employment of a judicial proceeding.'" (citation omitted)).  Although some courts have held that an administrative *proceeding* can serve as the basis for an abuse of process claim, the cases cited by Plaintiff involve adjudication performed before an administrative law judge.  Here, there was no such proceeding, nor has Plaintiff cited any law requiring one.  Because the issuance of an NFA is a discretionary action which does not involve judicial process, it cannot serve as the basis for an abuse of process tort.

Plaintiff's claim that Goodyear's use of the NFA in state court was an abuse of process must also fail.  Plaintiff alleges that Goodyear "employed the NFA letter, in the Berrien County action . . . as evidence absolving an operator of further liability under Part

201 of NREPA" in an attempt to "evade further liability."  (Dkt. No. 22 at ¶ 47.)  Plaintiff

believes that this was an abuse of process because the NFA itself states that the letter

does not represent a determination regarding full compliance with Part 201

Administrative Rules.[4]  (Dkt. No. 33 at 29.)

Goodyear denies ever arguing that the NFA precludes further enforcement activity

by the MDEQ; Goodyear claims that its position has always been that the NFA merely

represents the MDEQ's determination that, based on presently available information, no

further action was necessary.  However, even accepting Plaintiff's characterization of

Goodyear's legal position in the Berrien County litigation (as the Court must for purposes

of this motion), Plaintiff has alleged nothing more than zealous advocacy.  There is no

question that the NFA was relevant to the state court litigation, and Defendants were

entitled to move for admission of the NFA as evidence and to make arguments as to its

proper scope and weight.  Plaintiff was at liberty to, and did, contest the scope and weight

of the NFA before the state court judge.  The Court finds that Goodyear's alleged

behavior in presenting the NFA as evidence was in accordance with the purpose of that

litigation, and could not constitute an abuse of process.  *See Young v. Motor City*

*Apartments Ltd. Dividend Housing Ass'n, No. I & No. 2,* 133 Mich. App. 671, 682 (1984)

---

[4] The final paragraph of the NFA letter reads:
"The MDNRE has not made a determination regarding full compliance with the Part 201
Administrative Rules effective December 21, 2002. The MDNRE express no opinion as
to other contaminants beyond those identified and remediated as part of the
representations submitted. This document does not convey or imply any other position of
the MDNRE regarding known or potential environmental conditions and compliance with
environmental protection laws and regulations."
(Dkt. No. 22, Ex. 4.)

(holding that the plaintiffs failed to allege an improper use of process where the complaint depicted "nothing inconsistent with the zealous representation of claims that is inherent in our adversary system and which is properly governed by the Michigan court rules.").

IV.

After careful consideration, the Court finds that Plaintiff's complaint fails to state a claim upon which relief may be granted.  Even granting Plaintiff all reasonable inferences, Plaintiff has not shown how a discretionary letter issued by the MDEQ has deprived him of a constitutionally protected property right.  Likewise, Plaintiff has not shown how the issuance of an NFA or the subsequent use of an NFA as evidence in state court can constitute an abuse of process.  Accordingly, Defendants' motions to dismiss will be granted.  An order consistent with this opinion will be entered.

Dated:    January 3, 2012                    /s/ Robert Holmes Bell
                                             ROBERT HOLMES BELL
                                             UNITED STATES DISTRICT JUDGE